CLARENDON S. SEAVER v. HORACE PIERCE.

*Sheriff and Deputy. Interest. Sheriff's Sale on Credit.*

In an action against a sheriff for default of a deputy in not paying over to the party entitled the proceeds of a sale of property attached by the deputy, evidence that the action, in which the attachment and sale was made, was instituted by the parties to it for the purpose of enabling the defendant therein to defraud his creditors, is not admissible, as the sheriff is accountable for the default in such case.

A sheriff is also liable for default of a deputy when the deputy sells goods attached that are liable to perish, etc., on application of the parties, on credit, by direction of the defendant therein, but subsequently receives pay therefor, which he refuses to pay to the party entitled; but it must appear affirmatively that he received the money during the pendency of the suit, or before the attachment lien was discharged.

Demand for the money was made soon after the attachment lien was discharged by a judgment for the defendant in said suit, and the court ruled that the officer was not liable for interest prior to the demand. *Held* that in this there was no error.

The deputy having taken a note for a portion of the goods sold by him on credit, and passed it over to the sheriff, and the latter having taken a bond of indemnity from the maker against any loss on account of it, and not having thereafter tried to collect the note, the sheriff thereby made it his own, and became accountable for it.

ACTION on the case against a sheriff for the default of his deputy, Amory Parker. Plea, general issue. Trial by jury, June term, Orleans county, 1869, STEELE, J., presiding.

It appeared that on the 12th day of January, 1863, the plaintiff's stock of goods was attached by the said Parker, who was a deputy of the defendant, who was then sheriff of Orleans county. This attachment was made on a writ in favor of *E. C. Merrill* v. *C. S. Seaver*, the plaintiff, and subject to this attachment on a writ *S. S. Seaver* v. *C. S. Seaver*, and shortly after this several other attachments were made, by said Parker, of the same goods, on suits against C. S. Seaver, in favor of other parties. Upon the written request of C. S. Seaver, the goods were sold upon the writs, under the statute providing for such sales, before judgment, of perishable property. The sale was completed March 25, 1863, and amounted to $4,466.06. All the suits on which the goods were attached were amicably adjusted, and the attachment released before August, 1867, except the said suit *Merrill* v. *Seaver*. This suit was litigated, and finally terminated in the supreme court,

August term, 1867, by a judgment for the defendant to recover his costs. On the 20th of September, 1867, the plaintiff demanded of Parker the avails of said sale, above Parker's fees for making the sale, and on Parker's failure to comply with the demand, this suit was, on the 4th day of December, 1867, commenced. It appeared that, since the suit was commenced, a part, but not all, of the avails of said sale has been paid to the plaintiff.

The defendant offered evidence tending to prove that the said suit, *Merrill* v. *Seaver*, was founded upon a note given for an interest in a patent right which said Seaver bought of Merrill, under the belief that it was not attachable property, and with a view to having his goods attached to pay the note, and thus defraud his creditors; that at the time he gave the note he arranged to notify Merrill when to make his attachment, and at the same time was buying goods in Boston on credit, with a view to having Merrill attach them; that Merrill was cognizant of the scheme, and agreed to aid Seaver to carry it out, and did so by making the attachment when notified to do so by Seaver, according to arrangement; that the suit *S. S. Seaver* v. *C. S. Seaver* was commenced by said C. S. without the knowledge of S. S., who was the father of C. S., and that the object of this suit was to cover what property was not exhausted by Merrill's attachment; that the suit, *S. S. Seaver* v. *C. S. Seaver*, was afterwards adopted by S. S., and proceeded to judgment for the plaintiff, but was finally settled without the issue of any execution; in short, that the purchase of the patent right was made and the attachment procured with a fraudulent design of getting into C. S. Seaver's hands nonattachable property, and having his goods attached to pay for it, and defeating his creditors of their pay for the goods, and that Merrill sold the patent interest and made the attachment with full knowledge of Seaver's design.

This evidence the defendant offered, together with proof, which was not objected to, that no part of the avails of the said sale came into the defendant's hands before this suit was instituted, and that all which had come in since had been paid over to the plaintiff, and claimed that this evidence tended to show an unlawful use of the deputy sheriff, or an employment of the deputy

sheriff for a purpose with respect to which the sheriff would not be liable in case the deputy made default. This evidence was objected to by the plaintiff, and excluded by the court, to which the defendant excepted.

The following facts were established, some by evidence which was uncontradicted, and some by the special verdict of the jury:

The whole amount of the sales was $4,466.06 ; of this sum, there was paid to Parker during the sale, which lasted fourteen days, $2,395.52. The balance of the sale, $2,070.54, was upon a credit given by Parker at the sale, by the direction of this plaintiff, C. S. Seaver. No definite time of credit was agreed upon or given, but the sale was made, so far as this sum of $2,070.54 was concerned, upon a notice that the goods were sold on credit, and cash down would not be required. Of this $2,070.54, there remains uncollected an account against George Ide for $201, an account against E. C. Merrill for $90, and sundry small uncollected bills to the amount of $36.92. There were also bills to the amount of $910.99, which make part of said $2,070.54, for which S. S. Seaver gave his note, or was otherwise responsible. This claim against S. S. Seaver was passed over to the sheriff, the defendant Pierce, by Parker, and Pierce surrendered it to the plaintiff, C. S. Seaver, who accepted and receipted it as of March 23, 1863, when the goods were purchased. The rest of the goods sold on credit were paid for, and Parker received the money prior to September 20, 1867. Of the sum of $2,395.52, the amount of Parker's cash receipts during the sale, $606.99 was paid to Parker on days subsequent to the days when the goods for which it was paid were sold, but was all paid for before the sale, which lasted fourteen days, was completed.

During the sale, on the 14th March, 1863, Parker handed George Ide $650 of the cash received in the sale, and took Ide's receipt for the same, to return on demand. Nothing was said of interest. No demand was made of Ide for this money until subsequent to Seaver's demand of Parker, September 20, 1867. During the same month of September Parker gave this receipt to the defendant Pierce. Since then Pierce has collected $535 of Ide, on the receipt, and on the 13th of January, 1868, Pierce paid over to the plaintiff, C. S. Seaver, the said $535, and took his receipt therefor. The remainder of Ide's receipt has not been paid, and his account for $201 is also unpaid. On the 21st of March, 1863, Parker handed the said E. C. Merrill, from the avails of the sale, the sum of $1,410 cash, and this was added to

the amount of Merrill's account for $90, before mentioned, and Merrill gave Parker a note for the $1,500, signed by himself, H. W. Merrill and Daniel Webster, and payable to Amory Parker, on demand. This note is dated March 21, 1863, and says nothing of interest. On the 25th of May, 1863, Parker handed, from the same funds, $300 more to Merrill, for which, on that day, he took the note of Merrill and one Bishop. This note is for $400, on demand, with interest, and $100 is endorsed as of date. No part of either of Merrill's notes is paid, and Merrill was not called on for the pay until subsequent to Seaver's demand of Parker, September 20, 1867. During the same month of September, Parker passed both the Merrill notes to the defendant Pierce. In October, 1867, Pierce employed J. E. Dickerman to call on Merrill for the pay on the notes. Merrill refused to pay them, but on the 11th of November, 1867, executed a bond in favor of Pierce, to indemnify Pierce from any losses he may sustain by reason of Merrill's failure to pay the notes. This bond was signed by E. C. Merrill, Daniel Webster and E. O. Bennett, and was accepted by Pierce, since which time no measures have been taken to collect the notes. But the evidence was that Pierce made no promise, on taking the bond, to forbear on the notes.

The defendant claimed that he should not be holden for the amount of any sales after the first day, if the jury found the facts as his evidence tended to prove, for such sales would be the act of Parker under the direction of the plaintiff, and as the plaintiff's agent, and not of such an official character as to put the sheriff under obligation to answer for Parker's default, and that in any event the defendant was not responsible when credit was offered by Parker under this plaintiff's direction, and the purchaser of the goods availed himself of the offer and did not pay for the goods until some time subsequent to the completion of the entire sale.

The court refused to instruct the jury as requested, and ruled, *pro forma*, that the fact, if found, that the goods were sold on credit by the deputy sheriff, would not excuse the sheriff from responsibility, except as to the goods so sold which had not been paid for ; to all of which the defendant excepted.

The court told the jury to render a verdict for the plaintiff, and in determining the amount to ascertain the whole amount of the sale and deduct from it, first the $910.99 which the plaintiff receipted to the defendant ; secondly, the uncollected accounts against Ide for $201, against E. C. Merrill for $90, and against sundry persons for $36.92, provided they should find from the evidence, that these accounts were for goods sold on credit

by this plaintiff's direction; thirdly, Parker's reasonable fees; then to compute interest on the balance from September 20, 1867; and from the amount thus ascertained to deduct the receipt of January, 13, 1868, and the interest thereon, which would leave the sum which the plaintiff was entitled to recover. To so much of the charge as suffered the jury to deduct the Merrill account of $90 the plaintiff excepted, upon the ground that even if this account was for goods sold upon credit, the sheriff had made himself responsible for it, by taking the note of $1,500, and his subsequent conduct with relation to the note and bond.

The plaintiff also excepted to the ruling of the court, that the defendant was not liable for interest prior to September 20, 1867. The court required the jury to find specially, whether there was a credit given at the sale by direction of the plaintiff, and if so what was the amount of sales so made. The court told the jury that in answering this query, they would, in stating the amount, if they found a credit was given, include no sales on which Parker received the cash during the days of sale, but only those in which the purchaser availed himself of the offer of credit by not paying until subsequent to the completion of the vendue ; that sales on which the cash was paid during the vendue were substantially cash sales. The jury found that a credit was given and answered the inquiry as to the amount of sales so made by stating the sum at $2070.54.

The jury found a verdict for the plaintiff for $2370.19, and reported specially the allowance of items by which this result was reached.

*Timothy P. Redfield,* for the plaintiff.

The first *excuse* is the claim that the plaintiff and Merrill fraudulently combined to cheat the plaintiff's creditors. If this were so, Merrill could not make it a defense. *Carpenter* v. *McClure,* 40 Vt., 108. And for a much stronger reason the sheriff cannot excuse himself from doing his duty by any such averment.

If the deputy sold on credit in such manner that the sheriff would be exonerated if the goods had been lost, still if the money in fact came into the deputy's hands, he held it as sheriff, and if that plaintiff had recovered judgment, the law required him to apply it in satisfaction ; and if judgment was rendered for the defendant, he was bound by law to *pay it to the defendant.* The $90 for goods sold Merrill, which, with $1,410 cash, constituted

the loan to Merrill and Webster, March 21, 1863, and made up the $1,500 note, came into the hands of the deputy, and was loaned by him to Merrill and Webster. The sheriff should be liable for another reason : he has elected to make the notes his own, by allowing them to become worthless and outlawed, and substituting an indemnity for not collecting the notes. *N. H. Savings Bank* v. *Varnum*, 1 Met., 34. The sheriff should account for all interest recovered. After judgment in favor of the plaintiff, it became the duty of the sheriff to restore the money to the plaintiff, without demand ; and, if he withheld the money after it became his duty to pay it over, he must pay interest from that time.

*Edwards & Dickerman* and *John P. Sartle*, for the defendant.

The court below should have admitted the testimony offered. *Aubert* v. *Maze*, 2 Bos. & Pul., 371 ; *Cannon* v. *Bryce*, 3 Barn. & Ald., 179 ; *Simpson* v. *Bloss*, 7 Taunt., 246 ; *Webb* v. *Brooks*, 3 Taunt., 179 ; *Mitchel* v. *Cockburn*, 2 H. B., 380 ; *Branton* v. *Toddy*, 1 Taunt., 6 ; *Gross et al.* v. *Page*, 1 Hart's N. P., 105.

It was error in the court, refusing to charge the jury as requested, in relation to the effect of Parker's selling the goods upon credit by the direction of C. S. Seaver, the plaintiff in this suit. When the deputy sells within his official sphere, for cash down, he is made responsible for the amount of the sales. If he sells on credit at the instance of the party, he is not responsible for the collections. No law requires him to make the collections. Therefore, if he does make the collections, he does it outside of the law, and as agent of the party. *Bellows* v. *Adm'r of Allen*, 23 Vt., 169 ; *Kimball* v. *Perry*, 15 Vt., 414 ; *Strong* v. *Bradley*, 14 Vt., 55 ; *Strong* v. *Bradley*, 13 Vt., 9 ; *Fletcher* v. *Bradley*, 12 Vt., 22 ; *Cook et al.* v. *Palmer*, 6 Barn. & Cress., 739 ; *The King* v. *The Sheriff of London*, 1 Chitty, 613 ; *Donham* v. *Wild*, 19 Pick., 520 ; *Gorham* v. *Gale*, 7 Cowen, 739.

The ruling of the court below as to interest was correct. *Hubbard* v. *R. R. Co.*, 11 Met., 124 ; Sedg. on Dam., 378 ; *Dodge* v. *Perkins*, 9 Pick., 369.

The opinion of the court was delivered by

PROUT, J.   A recovery in this case is resisted :

*First*, because the attachment, in respect to which it is claimed the defendant is liable, was fraudulent; that the parties to it mutually participated in an illegal object and purpose, that being to defraud the plaintiff's *bona fide* creditors.   The fraud is said to consist in this intent and design, and the fact that the note, upon which Merrill brought his suit and made the attachment, was given and made for what they believed was non attachable property.   Other facts are relied upon, which are detailed in the exceptions, that not only have a tendency, but would show if proved, that such was the character and nature of the transaction.   But supposing all this to be as the defendant claims and as he offered to prove, the note was valid as between the parties to it.   Merrill could enforce its payment as against the plaintiff, and he could not resist a recovery upon it, on this ground alone.   As between them, it was not void because fraudulent as to creditors, but it afforded a proper ground and foundation for the proceeding resulting in the attachment and sale of the plaintiff's property.   The officer, as connected with that proceeding, does not stand in the relation or in the attitude of a creditor, having a lien upon the property or fund, but upon Merrill's right and claim, and the authority conferred by his process.   Under such circumstances, to say that he can hold the attached property or its avails without accountability to the party entitled, would be going beyond all precedent fairly understood and applied.   We think the court was right in excluding this evidence.

*Second*, It is claimed that the defendant is not liable, because the goods were sold on credit, the plaintiff having directed it. This fact the exceptions show as to sales amounting to $2070.54, but it does not appear that the attaching creditor or creditors consented to or directed it ; the plaintiff directed it.   This may be important as bearing on the question as to what was the officer's real relation to the sale, whether he was acting in his official character in respect to Merrill, upon whose process the goods were sold, and in the character of a mere agent under instructions in respect to the plaintiff, who was the defendant in that process.   It

is unnecessary however to consider this question, as Merrill's rights, were he entitled to the fund, are not involved, and as the case may be disposed of upon other grounds. The case shows that Merrill's attachment was made on the 12th of January, 1863, and the lien created by it was not discharged until August, 1867, when the suit was terminated by a judgment of this court against him, the defendant's deputy in the meantime holding the avails of the goods. The goods were sold on writs or mesne process, the plaintiff having made application for that purpose in conformity with the statute authorizing a sale of property, liable to perish, waste or to be reduced in value by keeping. Gen. Sts., 295, § 41. The sale, contemplated by this provision, is not for the purpose of securing a present or immediate application of the avails to the debt, or claim in suit, but the money realized and in the hands of the officer awaits the determination of the cause, and the object of the proceeding is merely to avoid loss and expense in respect to the property attached, and which might otherwise occur. Such being the object of a sale on mesne process, the funds arising therefrom awaiting application and depending upon the ultimate termination of the suit, and the proceeding being beneficial to the parties in interest, we think the mere fact that the sale was made on time or credit, although directed or assented to by the parties, does not entirely change the legal or official relation of the officer as connected with the proceeding as to any funds realized from such sale, and that came into his hands during the pendency of the suit, or existence of the lien created by the attachment. Why should he be exonerated from liability, and as for an official neglect in respect to funds, thus coming into his hands, which he refuses to pay over, and which he holds by virtue of the process ? His liability, cast upon him by the law, is not increased, nor is the risk greater in respect to actual receipts, than in respect to the property itself while in his custody. He has the money and holds it as sheriff by virtue of the process and the statute authorizing the sale. It is true that when property has been sold by the officer on credit by direction of the party, and a loss ensues in consequence of it, the officer is not liable, nor would he be when such sale was made on execution, as held in the cases to which we have been referred. But

in this case, confining and limiting the liability of the officer to whatever fund or money came into his hands by virtue of the process and sale, before the determination of the suit in which the attachment was made, we fail to discover that his liability is increased. Indeed the fact is otherwise. The question then is, when did this fund, arising and resulting from the sale on credit, come into his hands ? In the view taken and adopted by us, and which I have endeavored to express, in order to charge the sheriff, the deputy must have received the money during the pendency of the suit, or before the lien was discharged by a judgment in favor of the defendant in that proceeding. This fact must appear, and appear affirmatively. The case fails to show how this is. From what appears we are unable to say but what a part of the goods sold on credit were paid for subsequent to the rendition of the judgment referred to, as the exceptions state that the deputy received the money for the goods sold on credit prior to September 20, 1867, the date of the demand.

In regard to the question of interest, we think the instructions to the jury were correct. There was no duty resting upon the defendant's deputy to pay over the money until the lien existing upon it was discharged, a fact within the plaintiff's knowledge, but of which the deputy may have been ignorant until demand made.

In regard to the plaintiff's exception in relation to the ninety dollar item, being Merrill's account, we think it well taken. That item was embraced or included in the note of fifteen hundred dollars, given by Merrill and Webster to the defendant's deputy. This note was passed by the deputy to the defendant, who subsequently, by his attorney, called on Merrill for payment. Merrill declined to pay, when he gave a bond to the defendant to indemnify him against any loss he might sustain by reason of Merrill's failure to pay it. These facts, together with the further fact disclosed by the case, and that is, that the defendant made no effort to collect the note, show that he made it his own ; and under the circumstances, we think, he should be held liable for the amount of it in this action.

The result is, the judgment is reversed and case remanded.